UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JUAN MANUEL VILLALOBOS
SANCHEZ and YORDAN SERISENL
SOLLET RUIZ,

Petitioner,

v.

KRISTI NOEM, Senior Warden,
Secretary of the Department of Homeland
Security, et al.,

Respondents.

Case No.:  26-CV-559 JLS (MMP)

**ORDER (1) GRANTING IN PART
PETITION FOR WRIT OF
HABEAS CORPUS AND (2)
DENYING AS MOOT MOTION
FOR TEMPORARY
RESTRAINING ORDER**

(ECF Nos. 1, 2)

Presently before the Court are Petitioners Juan Manual Villalobos Sanchez's and Yordan Serisenl Sollet Ruiz's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1) and Motion for Temporary Restraining Order ("Mot.," ECF No. 2).  Also before the Court is Respondents Kristi Noem's (Secretary of the Department of Homeland Security), Pamela Jo Bondi's (U.S. Attorney General), Todd M. Lyons's (Field Office Director, Immigration and Customs Enforcement and Removal Operations), Jesus Rocha's (Acting Field Officer Director, San Diego Field Office), and Christopher LaRose's (Warden of Otay Mesa Detention Center) (collectively, "Respondents") Response in Opposition to Habeas Petition and Motion for Temporary Restraining Order ("Ret.," ECF No. 7) and  Petitioners' Traverse ("Traverse," ECF No. 8).  For the reasons

1

set forth below, the Court **GRANTS IN PART** Petitioners' Petition for Writ of Habeas Corpus (ECF No. 1) and **DENIES AS MOOT** Petitioners' Motion for Temporary Restraining Order (ECF No. 2).

## BACKGROUND

Petitioners, both natives of Cuba, allege that they have been detained by the United States Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") since December 2025. Pet. at 2. Petitioners were ordered removed in 2017. Pet., Ex. A ("Sanchez Decl.") ¶ 2; Pet., Ex. B ("Ruiz Decl.") ¶ 2; Ret. at 2. ICE could not deport Petitioners to Cuba, presumably because Cuba would not accept them, and thereafter released Petitioners under orders of supervision. Pet. at 2; Sanchez Decl. ¶ 6 (After being re-detained in December 2025, a deportation officer "just told . . . Cubans that Cuba was not going to accept [them]."); Ruiz Decl. ¶ 9 (After being re-detained in December 2025, "[a]n officer did tell a group of Cubans that Cuba was not accepting [them].").

In December 2025, Petitioners were re-detained during ICE check-in appointments in Florida. *Id.* Petitioner Juan Manuel Villalobos Sanchez alleges that at the time of his arrest, an ICE agent told him his supervision was revoked because it "was a new administration" and "the laws had changed." Sanchez Decl. ¶ 4. Petitioner further alleges that he was given a paper in English that he did not understand. *Id.* ¶ 5. Respondents submit that Petitioner was "personally served with a Notice of Revocation of Release, terminating his prior release on supervision and notifying him that he was being taken into custody in order to enforce his final order of removal." Ret. at 2. Respondents further submit that "ERO conducted an informal interview to afford Petitioner an opportunity to provide a[] . . . response to the reasons stated in the Notice," but Petitioner "did not provide a statement in response." *Id.* at 2–3. ICE thereafter notified Petitioner that it intended to remove him to Mexico. *Id.* When transferred to Otay Mesa Detention Center and transported to the San Ysidro Port of Entry for removal to Mexico, Petitioner "willfully

26-CV-559 JLS (MMP)

failed to comply," but did not "express a fear of persecution or torture if removed to Mexico." *Id.*

Petitioner Yordan Seriesnel Sollet Ruiz alleges that at the time of his arrest, ICE agents told him he was "arrested because [he] had an order of deportation," but "did not give [him] any other explanation." Ruiz Decl. ¶ 6. Petitioner also claims he was not provided with an interview to challenge his detention. *Id.* ¶ 7. Respondents submitted that Petitioner was "personally served with a Notice of Revocation of Release, terminating his prior release on supervision," which "advised Petitioner that ICE had decided to take him into custody in order to enforce his removal order." Ret. at 4. Respondents, contrary to what Petitioner claims, further submit that "ERO conducted an informal interview to afford Petitioner an opportunity to provide an oral response to the reasons stated in the Notice," but Petitioner "did not make any statement in response." *Id.*; *see also id.*, Exs. 2, 3. ICE thereafter notified Petitioner that it intended to remove him to Mexico. *Id.* When Petitioner was transferred to the Otay Mesa Detention Center and transported to the San Ysidro Port of Entry for removal to Mexico, Petitioner "failed to comply," but did not "express a fear of persecution or torture if removed to Mexico." *Id.* at 4–5.

Petitioners now allege that their re-detention violates the Due Process Clause of the Fifth Amendment, ICE's regulations, and *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See generally* Pet.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—

3

26-CV-559 JLS (MMP)

federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

**DISCUSSION**

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R.

26-CV-559 JLS (MMP)

§ 241.13(i)(2).  ICE may also re-detain if the non-citizen "violates any of the conditions of release."  § 241.13(i)(1).  If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after [his] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  § 241.13(i)(3).  The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision."  *Id.*

Here, Petitioners were ordered removed in 2017 and released on orders of supervision, presumably, because removal was not foreseeable.  Pet. at 2; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").  Petitioners were re-detained by ICE agents in December 2025.  *Id.*  The only notice Petitioners received regarding the reasons for their re-detention appear to be form revocation letters written in English.[1]  *Id.*  The Notice of Revocation letters appear to have stated only that Petitioners were re-detained because ICE "decided . . . to enforce [their] final order[s] of removal."  Ret., Ex. 1 ¶ 1; *see also* Ret., Ex. 2 ¶ 13.  Such notice is insufficient, as it does not provide a "meaningful explanation for the revocation."  *See, e.g.*, *Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3651899 (C.D. Cal. Dec. 5, 2025) (finding that petitioner was entitled to release based on insufficient notice of revocation); *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025) (finding notice insufficient where it failed to identify specific changed circumstances justifying revocation); *Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's

---

[1] The Court notes that the Parties have not provided the Court either Notice of Revocation of Release served to Petitioners by ICE agents.  Traverse at 1; Ret., Ex. 1 ¶ 11, Ex. 2 ¶ 13.  Respondents do not provide further detail about the content of the Notices.  *See* Ret., Ex. 1 ¶ 1, Ex. 2 ¶ 13.

26-CV-559 JLS (MMP)

release"). Nor does it account for changed circumstances justifying revocation and re-detention in Petitioners' cases. Respondents contend that "there is a significant likelihood that Petitioners can be removed to Mexico in the reasonably foreseeable future." Ret. at 7. The facts as presented to the Court, however, do not indicate that Respondents made such a determination prior to revocation. *See Rokhfirooz*, 804 F. Supp. 3d at 1099; *see also* 8 C.F.R. § 241.13(i)(2). And as to Petitioner Juan Manuel Villalobos Sanchez, the Notice was not in a language he understood. *See Arshakyan v. Noem*, No. 1:26-CV-00394-DJC-SCR, 2026 WL 221771, at *4 (E.D. Cal. Jan. 28, 2026) (requiring written notice in a language the petitioner understands to effectuate third-country removal).

A failure to provide meaningful notice begets a failure to provide a meaningful opportunity to respond. Although allegedly provided informal interviews, Petitioners must have the opportunity to "adequately respond to the reasons for revocation stated in the Notice." *Kiwana v. LaRose*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *3 (S.D. Cal. Jan. 14, 2026) (internal quotation marks and citation omitted). ICE's failure to provide a sufficient explanation for revocation, to the extent it provided one at all, deprived Petitioners of the opportunity to adequately respond. *See id.* In doing so, Respondents failed to follow their own regulations.

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of their supervised release without notice or an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025

26-CV-559 JLS (MMP)

WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).  Because Respondents have failed to follow their own regulations in re-detaining Petitioners, the Court **GRANTS** the Petition and need not address Petitioners' remaining arguments.

### CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioners' Petition for Writ of Habeas Corpus (ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 2).  The Court **ORDERS** Respondents to immediately release Petitioners from custody subject to the conditions of their preexisting Orders of Supervision.  The Court **ORDERS** that Respondents cannot re-detain Petitioners without following the procedures set out in 8 C.F.R. § 241.13(i) and other implementing regulations.  The Parties are **ORDERED** to file a Joint Status Report by March 3, 2026, confirming that Petitioners have been released.  The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  February 17, 2026

Hon. Janis L. Sammartino
United States District Judge

26-CV-559 JLS (MMP)